5, Unwired Planet v. Apple. Please proceed, Mr. Campbell. May it please the Court, John Campbell on behalf of Unwired Planet. This Court should reverse the District Court's grant of summary judgment because the District Court erred by resolving genuine issues of material fact in favor of the movement and incorrectly construing two claim terms. Using the 446 patent as an example, the District Court committed two errors that it repeated. First, the District Court resolved factual disputes regarding the comparison of the accused products to the properly construed claims in favor of the movement. And second, the District Court credited the expert testimony of the movement over the expert testimony of the non-movement. If we look at the 446 patent, what we find is that facts about error correction, delay, and dedicated resources turned into summary judgment as to whether Siri uses voice input. Now the District Court first construed voice input to require that voice input travels over a voice channel. Setting aside that error for a second, the District Court then in the summary judgment context at the record at page 855 asked, what is a voice channel? How about you move on to your claim construction argument? Okay. So the 446 claim construction, the District Court concluded that, as I just mentioned, that the voice channel limitation should be, and this is a quote from the page at 842, voice channel limitation should be, quote, should be, limitation should be included in claims 1 and 31. So we weren't really construing voice input, which is fairly plain and ordinary meaning words, but deciding that a voice channel should be incorporated into claims 1 and 31. Now this is the wrong approach. What should have been done is determine the plain and ordinary meaning of voice input in light of the specification. Let me ask you, before you get to that question, for me there's a preliminary question of what the term voice channel means as it is used in the specification of the 446, to your understanding. So voice channel is, there's not a definition provided of voice channel, but there are a lot of examples provided of how voice is provided to the speech recognition service. Let me offer you as a working hypothesis, as one way of looking at this question. You could say, well, a voice channel is not meant to suggest any particular type of technology. It is meant to mean simply the channel over which voice is traveling, a voice signal is traveling at a particular time. And it may be that certain protocols can carry voice in a way that makes it much more suitable for communication and other protocols not. But one could view either one as the voice channel if it's being used for voice. Do you have a position with respect to that approach to the term voice channel? Your Honor, Judge Bryson, I think that's a very reasoned and proper approach to what a voice channel is in light of the specification of this patent. There's no discussion, certainly no discussion, limiting it to the characteristics the district court required. And in fact, very much in line with what Your Honor just said, the patent describes using devices that have voice capabilities, such as a PDA or a handheld computer. And if those devices use their voice capabilities, then they're simply transmitting voice over a channel. There's no requirements as the district court put on it for there to be the characteristics of setting up a phone call with two participants. In fact, what the requirements that the district court placed on it really don't make any sense in the context of this invention. What Your Honor's interpretation is, makes much more sense. Because you're not going to have what the district court said at 857. Is your argument, would you agree with the statement that the voice communication channel as disclosed in this patent is just a data channel? All it is, is just the data channel that transmits the voice. It doesn't have to be voice specific, it could be a regular data channel. Well, it has to have voice information, right? So it does have to carry voice. Well, can't all data channels carry voice? Certainly, I think they can. I don't know of any limitation on that. Certainly, we have today a voice over IP services. Well, I guess in the district court, you offered, I think if I recall correctly, an example of something that wouldn't really be what you mean by a voice channel, even though it's technically carrying voice, which would be sending via data a downloaded version of an Fair enough, you're right, we did. I guess one could say that's not really voice. Right, that's not really, exactly, that's not really voice, right? It's a recording. If I go later and download the oral argument from this, that's not really transmitting voice so much. I mean, it is certainly not, at least in the sense that this patent uses the term voice communication channel. Correct, correct. So there does need to be something to it, but it certainly doesn't need to be, as the 20 millisecond delay and dedicated resources, those requirements simply don't make sense in the context of this patent. But do you agree that claim one, at least, if not claim 35, does require two separate channels, one channel, a first communication path over which data, the voice will be sent, and a second channel, a second communication path over which the data will be sent back to the user? Certainly separate paths, a first communication path and a separate communication path. That's not necessarily require, a path is not necessarily a channel, but there's certainly got to be two different paths, a path where voice goes to the voice recognition server and a path where the, what is called the symbolic data file, comes back to the device. But what Your Honor is noting is that the claims use different language and require different things at different times. Claim 21 requires a voice communication channel. Claim one requires a communication path. Claim 31 has no limitation on this. Under the district court's interpretation that requires a voice communication channel because of certain sentences after sentences that talk about the present invention, we would have to put in the data channel in every claim. And yet the data channel or even a second path is not even part of every claim. But that would then be required under the district court's analysis as well to be put into every claim. The invention here, to get back, Judge Moore, to the claim construction, the present invention here is not a voice channel. The present invention is a speech recognition server that allows the mobile device to have speech recognition capabilities. There are about 40 times that the words present invention, the invention of this invention appear in this specification. And only twice in one of those sentences does the word voice channel appear and in both they're limited to one embodiment. It explicitly says that is just one embodiment of the present invention in those instances. This is not a case where, as in vernetics, the phrase one embodiment was mechanically prefaced throughout the specification. I'm sorry. No, no, please. Well, the most problematical aspect for you, I think, of the specification is the beginning of the summary of the invention where the two first sentences can certainly be read as being part of the same expression. And their voice channel, communication channel, is used and if you take the present invention that would suggest that the voice communication channel is a necessary part of the whole invention, which is to say all of the claims. Your Honor, there's two problems with that. First is that if you take that logic, you can't stop at voice communication channel. You then have to put in data communication channel because that's part of that paragraph as well. You have to put in review and editing the symbolic data file because that's part of that paragraph as well. So now you have to put in a number of limitations that are not in the other claims. The second issue is that if you look at the specification as a whole, again, there are eight instances where the patent talks about present invention, the invention, this invention doesn't use embodiment language and it specifically talks about a speech recognition server each and every time. Of course, I guess if you view voice communication channel as being nothing more than a channel over which voice is being sent at a particular time regardless of the protocol, then that problem goes away. It does. Part of the problem is how you view voice channel and if you put these requirements that the district court put on it, then voice channel shouldn't be part of the construction of voice input regardless. Now, to be sure that I understand the distinction that you're drawing between the voice channel and the data channel in the examples, I figured one, I guess it is. We're talking about the voice channel is 128 and the data channel would be what? I think the voice channel is 126. I'm sorry, 126. That's right. And the data channel is 128, right? Yes. I got the numbers wrong. So the voice channel is defined by the fact that a voice signal is being sent over that channel. Correct. And the data channel, ditto, with respect to data. Even the voice is going to be a form of it. That's correct. That's correct. That's right, Your Honor. Thank you. Could I ask you to move on to the 092 patent and the issue of induced infringement and knowledge? Yes, Your Honor. I'd be happy to. So for the 092 patent, the district court applied what is an objective test in deciding that Apple could not have, Apple had a strong enough argument to avoid liability under induced infringement. And what the district court said is that, although it rejected Apple's non-infringement argument, it said that argument was strong enough at A65. That's not the appropriate test under inducement. Global Tech says, took deliberate steps to avoid knowing the fact. Correct. So what is the evidence that Apple took deliberate steps to avoid knowing the fact of infringement? Well, there are facts from which a juror could reasonably infer they took deliberate steps. We know, at the record at A3478, that Apple told Unwired Planet, Unwired Planet's executive, we know what's in your portfolio. We know what you've got. We don't need to talk about it. We know that- We know what's in your portfolio. At most, arguably, could be inferentially, we know what patents are in your portfolio. Yes. How is that deliberate steps to avoid knowing the fact of infringement? It seems like you're almost at inferences squared at this point. Well, let me finish the facts and hopefully we won't be at inferences squared. So we've got that, okay? Then we know sometime later in February 2012, Apple files an information disclosure statement with the patent office identifying the O92 patent. So now we know Apple knows enough about it, they want to disclose it to the patent office in context of one of their patent applications. Then we know from the record- So what, again, possibly conveys notice to Apple of the O92 patent, but what I'm trying to get you to focus on are the deliberate steps that Apple took to avoid knowing about its infringement of that O92 patent. Yes, you are. I'm not going to have one fact. I've got to have three. But neither of those others help you at all, so- No, but I've got one more. Oh, good. So we know from the record at A12830 that Apple's 30B6 witness on behalf of Apple- 1-2-what? 1-2-8-3-0. 1-2-8-3-0. Okay. That Apple's 30B6 witness on behalf of Apple testified that Apple had not seen or reviewed the O92 patent. Now, a reasonable juror- That would turn global tech on its head. Okay. If simply knowing about a patent but failing to do an infringement analysis of it were sufficient, I don't see how that can be reconciled with the Supreme Court's decision that you have to take deliberate steps to avoid knowing a fact. Your proposition would result in every patent that you know of meeting the fact that you acted willfully, blindly of infringement. Well, I don't think it would go that far, Your Honor. How? How not? Because here- Because that can't be reconciled with global tech. Okay. Here you have specific circumstances. You have a negotiation going on between two parties for a license where one party says, we know what's in your portfolio. We know what you've got. Okay? That- But you did provide them with a list of patent numbers and the O92 was not one of the ones on that list. True, Your Honor. That's exactly right. It was not. They told Unwired Planet, they told us, we know what you've got. But that just gets you knowledge of the existence of the patents at most. Where's the second step, which is the one on which most people stumble? Well, they clearly know enough that they feel they have to disclose it to the patent office in an information disclosure statement. That doesn't tell us much about whether their device in this case infringes that patent or that they believed it or they had every reason to think it did and then took steps, affirmative steps, to keep from finding out. I'm not seeing any affirmative steps. Your Honor, they took the affirmative, even once they had been sued for infringement, they took the affirmative steps to stick their head in the sand and have no one, no one take a look at this. They can't. Go ahead. Good faith, as this court said in Smith and Nephew, is a fact question. And whether they have good faith when they stick their head in the sand and say, we're not even going to look. We've been sued, but we're not even going to look. We knew about it from negotiations. We knew about it to tell the patent office. We've been sued. But now we're not even going to take a look at this. That's sticking your head in the sand, and that's willful blindness. There were some allusions in, I guess it was your, maybe it was in the Applebee's brief, to the fact that we were really only talking about pre-suit infringement. Where are we on that? Because obviously, at least with respect to knowledge of the patents, once there's a lawsuit, they have knowledge of the patents. Induced infringement was alleged for a full period, both pre-suit and post-suit. Was it clear that there was no distinction drawn with respect to the pre- or post-suit element here? I don't think there was ever. I don't recall a distinction being made, so I think in that sense, I guess it was clear there was no distinction being made. So your... I think I probably, like Judge Bryson, am about, are curious about what your precise argument is. Because in your blue brief, then their red brief, and then even in your gray brief at page 25, your header is, Apple had pre-suit knowledge of the patent. And I guess I thought, obviously wrongly so, that your header defined the nature of what you were arguing. Because everything there, nothing thereafter, you never rely... Let me ask you, because I must be missing it. Where do you rely on post-suit knowledge and failure to investigate? Because everything in your reply brief that I can see is about pre-suit knowledge, your header and all the discussion. So I guess I thought this was a whole world about pre-suit stuff. Your Honor, we believe that the facts are sufficient that a reasonable juror could find pre-suit knowledge. It would be a lot easier in terms of knowledge of the patent post-suit. At bare minimum, post-amended complaint. Fair enough, Your Honor. So I was a little surprised that in discussing knowledge, there was no allusion to that, and therefore assumed, perhaps, that you were really only talking about pre-suit. Your Honor, I think the fact of when the knowledge was... What we were focusing on, at least, was the circumstance where Apple was alleging that a litigation defense could somehow become a get-out-of-jail-free card for induced infringement. Because if that's the case, that's going to happen in at least every case I've been a part of. There's always a defense. Where do you argue this post-suit thing? In your brief at page 30, at the end, you say, the issue is Apple's subjective pre-suit beliefs. The issue. That's what you tell us. And I don't see anything in this great brief, not a word about post-suit knowledge and failure to investigate. Where did you argue that to us? Your Honor... You defined the issue in your header and in your conclusion, everywhere in, and it's only pre-suit. Did you anywhere... I mean, you may have. This is a complex case. There's a lot of it. It's like four cases. And I get that. So did you ever argue anywhere to us, I mean, anywhere to us, that, OK, even if we have an established pre-suit, that there is post-suit evidence, because they had knowledge, at least at the time of the amended complaint, because that's when 09-2 really came into this, right? And the allegations of infringement. So at that point forward, did you ever argue that? Your Honor, the focus was on the subjective... I'm not asking what the focus was on. I said, did you ever make that argument? Because of the focus... Yes or no question. No, I will look at the record. I'm not aware of it. I'm not aware of a distinction of post-suit, pre-suit. Well, you made the distinction repeatedly in your brief. You said the issue is their pre-suit knowledge. You didn't say the issue is their knowledge. So you made that argument. You framed the issue. Yes, Your Honor. OK. All right. I don't want to let you cover anything else. But did the district court make its decision based on the pre-suit activities, pre-file activities, or the post-filing activities? Neither, Your Honor. The district court made its decision based on a belief that their litigation non-infringement argument was strong enough... That's what I mean, and that's post-filing. The court focused on post-filing. Whether you argued it or not, it seems to me that the court focused on Apple's non-infringement arguments. There was no discussion from the court or recognition from the court that it made any distinction of when the argument came up. It just felt objectively the argument was strong enough to overcome induced infringement. There was no focus on the court of the timing of the argument as to whether this would apply post-suit or pre-suit or at what time it would apply. So when I look at Apple's non-infringement arguments, it seems to me that they go more towards direct infringement and the argument isn't directed towards the divided infringement. That's correct, Your Honor. Their arguments were focused on direct infringement. Because the court doesn't say anything about any of the other actors. Correct, Your Honor. The court does not focus on any of the other actors. There was a summary judgment on direct infringement. The district court granted that. The district court then, without regard to the timing, said that that argument was strong. So the issues related to the third-party contractors and the users, those issues are still on the table. They were left out of it. I can't see in the decision that the court even addresses those issues. The district court didn't address those issues because the district court felt that objectively, because the defense was strong enough, that was sufficient to absolve induced infringement, period. So it was a focus on the objective versus the subjective. I recognize that the court alluded to the, at least arguably, objective strength of Apple's non-infringement argument. The court didn't say a whole lot on this point. This is the one sentence in the court's opinion. Otherwise, pretty thorough opinions, but pretty brief on this. But I'm wondering whether it's fair to read that as reflecting on the likelihood that Apple had a subjective view that there was not a strong case of infringement. Because certainly there's a relevant, the objective strength of the infringement case is relevant, at least, to the subjective view of the party that's in issue, isn't it? I do think it's relevant, yes, but I think because it's a good faith, because it's a subjective test, we have a fact issue as to whether Apple believed that in good faith or whether that came up in litigation, and the district court just simply doesn't address that. Well, I guess the way the district court characterized it, it says that a reasonable juror could not conclude that Apple was willfully blind to infringement, and then says because there was no high probability of wrongdoing given the strength of Apple's non-infringement argument, which suggests to me at least one way of reading that is to say that given that Apple had a very strong position, as the judge assessed it, on non-infringement, that the likelihood was that no one was going around hiding the ball. They didn't need to. That's the argument. I think that's probably the fairest inference for trying to say that the district court didn't apply an objective test to try to fit this into a subjective. The problem with that is there's still a good faith element as to whether it's believed, and that's an issue of fact, and as this court held in Smith and Nephew, even when the district court had announced summary judgment was appropriate, whether the induced infringer believed it, there was still an issue of fact there, even with a pronouncement from the district court that that was there. So certainly if we take that a step backward and we don't even have a pronouncement, but we decide that the defense is strong enough, there still has to be a fact issue as to whether Apple, in good faith, believed that argument to absolve them of induced infringement. Could I ask you to just quickly address your hash argument? Yes, Your Honor. So for the 260 patent, that comes up. There's two alternative arguments. That comes up under the less than 15 minutes scenario, and what is happening there is in that scenario, the byproduct transaction is sending what is called an X token, which is a hash of the password. It's a mathematical function applied to the password to secure the password. The information is still the same. The information is still the password. We've just secured that information in a way where we apply a mathematical function to it called a hash and send that to Apple's servers so that that is what they receive. It's the same user information, whether there's the hash applied and it's secure or not secure. I'm simplifying it so that you change the password into a number. I'm simplifying. Okay. I'm sorry. I want to say yes or no, but your password could have been a number, so you may change it from one number to another. It's an alphanumeric sequence of many characters, all hashes of the same length, I guess. Yes. Is it fair, also a simplistic way of putting it, but just to get a handle on this, is it fair to say that that is essentially an encrypted version of the password which just happens to be encrypted in a way that doesn't make it easy to decrypt? Yes, it is. I'm not sure the FBI. Maybe the FBI can do that. I'm not sure if the FBI can, but yes, that's fair to say. So a hash is unique to a user, correct? A hash will be unique to a user, yes. Okay. So what information does a hash contain? A hash contains, well, it can't go backwards, as Apple points out. But a hash is a mathematical function applied to the user's password at a particular time of day so that it only is good for 15 days. Does it contain any information on the user? It is the user's password in a secure form. We've just applied a mathematical function to the password. Is it kind of like with my kids when they were little, we used to spell things so they didn't know what we were talking about? Kind of like that. It's the same information, but they don't know what you're talking about and at that stage of their life they can't work backwards to it. All right. Thank you. I think that we should give Mr. Perry his 15 minutes. I'm sure you'll have 15 minutes. Thank you. That was a joke. You have longer. We went way over with him. So you don't need to feel constrained by your 15 minutes. Thank you, Judge Moore. And may it please the Court. I'll start, if I may, with the 446 patent, as my friend did. The summary of the invention describes the present invention as a speech translation system. It translates, quote, voice input, and the translation process begins by establishing a voice communication channel. That's at column 2 on page A192. I take it Unwired Planets does not dispute the general principle from this court that the present invention language can be limiting. It does not dispute the district court's determination that importing that limitation into the voice input element does not render any part of the specification nugatory, does not read out any preferred embodiment. Rather, Unwired Planets' only argument on claim construction is that the present invention doctrine is limited to a single sentence so that the limitation must appear... There's a present invention doctrine? Wow. The present invention exception, Judge Moore, perhaps is a better way to put it. If we start from the Blackletter Law, that we can't read limitations from the specification into the claims. We have an exception under the present invention exception. So you acknowledge that what you're asking us to is to read a limitation into the claim. Absolutely, Your Honor. That's what Judge Chhabria did under the court's decisions in Verizon and Honeywell and Absolute Software and so forth. So this is a disclaimer case? It's not a disclaimer because there's no narrowing involved here. It's only a question of what voice input means. It's a construction of that term, as Phillips allows, within the specification using specifically the present invention language, which is both Phillips and... But the plain meaning of voice input doesn't include a channel over which it's communicated. Well, Your Honor, it does because the way the... Well, there's a circularity here, but the present invention discloses that this is a two-channel solution to a problem of 1990s technology, right? These cell phones and other mobile devices had such limited computing power that they couldn't translate voice input into digital output. That's the digital signal processing chip problem that's discussed in the specification. The solution being provided here is sending the output over an analog voice line so that the digital translation can take place on the server side. Where does it say that? Are you saying that voice communication channel has to be analog? Yeah. Your Honor, it has to be... Analog does not appear. It has to be this. It says in the spec... Let me back up on that one. What is a voice communication channel? It is not any channel that can carry communication. Why? Because the patent does contain a definition. It says at page A194, column 6, line 21... The voice communication channel is generally established and coordinated using the infrastructure and procedures generally known in the art for setting up a phone call. I'm sorry. I don't actually even know where you are. Where are you? Column 6, what line? Column 6, lines 21 to 25. Okay. I... I'm... Okay, so in... In... In a discussion of a preferred embodiment with references to... With number of references to actually figures... That's right. It says this communication channel... Correct. Is generally established and coordinating using the infrastructure. Generally established... I mean, first off, it doesn't... It even has the word generally implying that not always. But secondly, this is just a preferred embodiment. Yes, Judge Moore. And then Judge Chabria asked the parties to please brief and provide expert evidence on what a voice channel meant at the time of the application. And the parties provided those supplemental briefs. And Unwired Planet said, and this is at page A13036 of the record, that that technology included cell phone calls, cordless telephone calls, and CB radio calls. Then, and this is the third leg of my stool, Your Honors, Apple put in an expert report from Dr. Rissavi in which he said, as a factual matter, that the characteristics of a voice channel at the time of the invention were three, the hallmarks of a voice channel, that it would not delay the transmission, that errors would be tolerated, and that network resources would be dedicated. And this report summarizes those at page A57. To say that those characteristics of a voice channel doesn't mean that the term voice channel is necessarily limited to something that has those characteristics. And let me give you an example. We know, for example, that those features are very attractive for conveying voice, but we also know that voice can be sent over something like a TCPIP system and it's a little clunkier and it sounds like the Metro's announcements, but it's still voice. And therefore, why isn't that a voice channel? Your Honor, because... When voice is being sent over. Because this was a summary judgment case. That was a factual question. We're now past claim construction and the district court said, what is a voice channel? The court said, it must be something identifiable, otherwise your claim is indefinite. What is it? Apple said, and Dr. Rissavi testified, it has these characteristics. But on page 13036, which you just referred me to, which I admit I had not actually read beforehand, it just says, are there any discernible limits on what constitutes a voice channel? Unwired Planet and its expert identified factors such as it transmits voice and it transmits silence between voice. And that's all it says. I don't see how that gets you to some admission by them that it is an analog channel of a particular kind. Your Honor. What were you referring to on 13036? They say that a typical call that was referred to was... On 13036, what are you referring to? That's what you referred me to. If you referred me to the wrong page, I'm happy to look at a different page. But it seems like one of the legs of your stool just fell off. Thank you. 13036 was what he said. Maybe he has a different page. Your Honor, I'm referring to lines 7 through 9 on 13036. When the inventor filed the 446 application, landline telephones, cordless telephones, and CB radios would have been examples of voice input being sent over a voice channel. Yes, those are examples. Yes, Your Honor. And then in the next question, or actually one question below that, question E, what are discernible limits of what constitutes a voice channel? Their answer is it has to transmit voice and also transmit silence between voice. That's it. That's all I have here. Okay. That's it. Let me talk about silence first, Your Honor. Dr. Rosavi, Apple's experts, had offered the three elements that I've proposed, and they never disputed that those were three elements. So that's the first piece of it. Silent pauses. They say that in their brief in this case. They say that in this brief. In their brief in this case, they cite A6192 for the silent pauses. That's their summary judgment brief. And if you look at their summary judgment brief, they refer back to Dr. Jones' report, which nowhere mentions silent pauses. So even their supposed limitation isn't actually supported by any evidence. Which is why Judge Chabria kept coming back to being this is a summary judgment case. There is a necessity to avoid the indefiniteness of these claims. And by the way, to avoid anticipation by Yamakita or obviousness under some of the other art that was both before the examiner. Yeah, none of which you even gave us in the appendix. You gave me three pages where you argued Yamakita anticipated. And all those three pages say is Yamakita anticipated. It gives me none of the facts of Yamakita. It cites nothing in Yamakita. It doesn't even contain quotes from Yamakita. But now you want us, despite the fact that the district court didn't address that argument, to address that on appeal and conclude that's a basis for affirming a judgment when you didn't even give us the reference or a single quotation from the reference? Your Honor, it's a basis for distinguishing that there are two different channels. As the patent says over and over again, voice channel is described some 43 times as being different than a data channel. And what a voice channel is then became the summary judgment question. Actually, wait. In the abstract, the voice channel is listed. And then it explains that the user's speech and voice recognition is then forwarded to the user through a separate data channel. Yes, Your Honor. I.e., a different data channel, not the same one. It can't be the same one. A channel separate from the voice channel, correct. A separate data communication channel. So couldn't it be referring to the voice channel as one form of data communication channel and this information has to be set back over a separate data communication channel? There is nothing in the specification or the expert reports that would support that conclusion, Your Honor. That is a possibility. This is the importance of the Yamakita reference. And Your Honor, I'm happy to submit all of those things if the Court is actually interested. The point of that only is that there was a reason that this patent claimed a voice channel and not two data channels. It's because there was prior art in which server-side speech recognition was handled over multiple data channels. Does any of the background of the invention discuss importance of a voice channel over a data channel in this patent? Well, it describes the state of the art as using these devices, having very small computing capability and therefore offshoring or offboarding the processing capability.  I can see absolutely nothing in any of the background of invention that even mentions a voice channel much less discusses the importance of two different kinds of channels being used. Am I wrong? Am I missing something? I can also see nothing in the objects of the advantages or the advantages discussion, which the advantages discussion begins at column 14 and it goes through at least 1, 2, 3, 4, 5, about 10 different advantages that the present invention achieves. No mention anywhere in there of a voice channel or the importance of a two-channel process or any of that. When someone says the present invention, and I know you've read all these cases, the present invention, and in these cases we look at the importance of this aspect to the nature of the invention, I don't see any touting of any significance or even benefit achieved by an analog voice channel that you're describing being touted by the patentee in a way that would convey to one of skill in the art that this is a really important part of his invention, stand up and take note. What am I missing? I think the background of the invention says mobile devices have limited computing capability, therefore they can't handle speech capability. We know, and this is not disputed actually, that the art had already disclosed server-side speech recognition using data channels. The only thing inventive here, the only thing that would be allowable over the prior art is something that does it a different way. What is disclosed here is using a voice channel. As I said, that voice channel and its cognates is used 43 times in the specification. That's no accident because that is the channel for the outbound communication that is disclosed as the basis for the invention. Just to make sure, circling back to a point that we discussed earlier, you're not saying that that voice channel needs to be analog, right? That's correct, Your Honor. It can be a digital signal. A digitized version of voice. If it met the requirements that Dr. Rasavi identified and that Unwired Planet didn't dispute for the characteristics of a voice channel at the time of the application. And if it was a digitized version of voice and the protocol being used to convey it met some but not all of the requirements that the expert identified as generally associated with what we ordinarily think of as voice channels. Then would it still be a voice channel? For example... It's hypothetical, of course, because this channel, the Siri channel... What I'm trying to get at is are these two discrete categories or is there a lot of wash between the two? Your Honor, voice is a form of data at one level of abstraction and voice channel may be a subset of data channel, again, at some level of abstraction. But if you digitize it, it looks a lot like the kind of data that the computer is accustomed to using. And what Judge Chabria said was we have to be able in the context of this disclosure to have a distinguishment between voice channels and data channels otherwise there's an indefiniteness problem. Unwired Planet hasn't argued that here because remember at the summary judgment stage they came in and said it's the spectrum, this infinitely variable spectrum with data channel on one end and voice channel on one end and it's always a facts and circumstances as to where any particular channel follows. And Judge Chabria said no, you just walked into an indefiniteness problem. There has to be a rule. Maybe there would be an indefiniteness problem for claims involving voice channel, arguably, but Claim 1 doesn't say any of that. What would be indefinite about Claim 1? It says a voice input signal which you can't possibly say a signal is the path or channel, right? You're not importing the channel into the voice input signal. No, Your Honor. But the indefiniteness problem would go away, I take it, if we took the really simple-minded definition of voice communication channel as a communication channel that carries a voice signal. It would, although... be invalid on obviousness grounds or anticipation, but it would be... it would avoid indefiniteness and would solve some of the problems we've been talking about, right? It would not be consistent with the disclosure, however, Judge Bryson. I mean, not even Unwired Planet or its expert proposed that definition in the district court or in this court. That's... But 13036, you pointed me to, proposed exactly that definition. It just said the transmission of voice in silences. Your Honor, but... With the technology of the time, there has to be some limitation to what distinguishes a voice channel from a data channel. Again, that comes back to Judge Chabria's point about the Bright Line Rule. And Apple's expert provided those limitations. They didn't. If it were any channel, Judge Bryson, that could carry voice, including the TCPIP channel that today does carry voice, then we are going to run... I would submit into both the indefiniteness problem and the anticipation problem, but that may be a matter of the consequences of that claim. We should probably let you move on, because I'd like to hear you talk about the 092 patent, if you have a chance. Absolutely, Your Honor. Is this case limited to pre-suit or post-suit? What is your understanding of that issue? The basis on which it has been litigated was the pre-suit knowledge. And let me explain that. The indirect infringement, as the Court is well aware, has essentially two components. One is, did Apple have knowledge of the patent? And the other is, did Apple have knowledge or was it willfully blind to the fact of infringement by others? And Judge Ray and I will get to your question about who the defense goes to in a moment. Apple denied both at the summary judgment stage. Knowledge of the patent and intent or willful blindness. The District Court and Unwired Planet put in all of its summary judgment evidence we would submit, including as it's summarized in the reply group, goes to knowledge that some person who may or may not have been an authorized agent of Apple had knowledge of the patent. Judge Chabria skipped over that point, didn't address that, either whether he vowed in a factual dispute or just didn't need to decide it, and went only to the second point, which is willful blindness as to the fact of infringement. That puts one in a little bit of this hypothetical world, right? Because Apple continues to deny knowledge of the patent, but then the question at prong two when prong one hasn't been decided is, well, if Apple had knowledge of the patent, did it actually intend others to infringe or did it know that others were using it to infringe? And what Judge Chabria said there was, no, there's no evidence of actual intent and I take it in this court, they've now dropped their argument as to actual intent. Then that question becomes willful blindness. The test for willful blindness, of course, we know from global tech, is deliberate action to avoid confirming a high probability of infringement. So, if Apple knew about the patent and it looked at the acts being undertaken, and Judge Rayner, here's the answer to your question, would it have known that the location services feature of its products infringed the asserted claims of the 092 patents? Apple took the position, no, because we only use one location positioning device, whereas the claims recite a plurality of devices. That's the merits dispute. Judge Chabria denied, and that would apply both as to Apple's own activities testing its products and so forth, and third party infringement because the app developers and customers are using that feature as developed by Apple. So, the infringement analysis as to that point is the same whether it's direct infringement or indirect infringement. What Judge Chabria said on direct infringement is Apple, you've got a pretty good argument, but I find a disputed fact as to whether certain of these location identifiers are in fact location identifiers within the meaning of the claim, so that has to go to trial. But then when he turned to the induced infringement question, he said again, I'm reading a little bit of the opinion, but he cited global tech and this is the way the analysis has to work, if Apple had known about the patent and had examined the allegedly infringing conduct, its infringement argument was so strong that there's no evidence, no reasonable jury could find that Apple took deliberate action to avoid confirming a high probability of infringing because there is no high probability of infringing. In fact, we would submit at the end of the day no probability of infringing because we don't infringe. That is the way the analysis played out. What Unwired Planet now comes to the court and argues is a variant of knowledge of the patent is alone sufficient to infer willful ignorance or willful blindness to induced infringement. The patentee and the United States Solicitor General made exactly the same argument in the Kamil case. Exactly the same argument that Unwired Planet makes in this court and the Supreme Court rejected it. My friends don't cite Kamil, either in their blue brief or in their reply brief, because this argument they presented, their attack on Judge Chabria was rejected by the United States Supreme Court and the Supreme Court went out of its way there to say the reason that argument won't work is precisely because the accused infringer may read the patent differently than the challenger and if that reading is reasonable. Counselor, if we go to the words of the court and they used well, the district court used the words strong evidence or is so it's looking at and saying that Apple had strong evidence of its non-infringing position. Right. Doesn't that mean that there's a dispute in facts and the court found in favor of Apple because it had stronger evidence but isn't that necessarily mean that there's a genuine issue of material fact and dispute? Not here, Your Honor. It may in some cases, but here there's no evidence from Unwired Planet on the second prong. All of their evidence goes to the first prong, that is knowledge of the patent. There is no evidence of intentional knowledge by Apple or willful blindness, deliberate ignorance of actual infringement either by itself or by others. That's the problem that I see here and I understand your argument, but the problem I have is that there's no mention whatsoever about the third party contractors or the users. Well, I actually don't think there's a dispute on this point. You can ask my friend, but the accused feature is developed by Apple and then is then incorporated in apps by developers and used by customers. So the inducement and the contributory infringement theories all depend on Apple's location services feature itself being infringing so that as to the point of dispute on the merits, there's no distinction between direct infringement and indirect infringement as to the act of infringement. And again, I don't think there's a dispute on that, but my friend will tell you. I think you've touched on this, at least indirectly, but I just want to make sure I understand your position on this with respect to the argument that the judge incorrectly applied an objective as opposed to a subjective standard. I take it your position is that while the judge used words that could be viewed as objective, he was saying, in effect, that there's no, the strength of Apple's position is further indicative of the fact that they were not engaged in willful blindness subjectively. I would say that almost exactly the same, Judge Bryson, by using the Supreme Court's test, that no reasonable jury could find that Apple took deliberate action to avoid confirming a high probability of infringement since when Apple actually looked at the question in reality, this is the post-suit analysis, right, when it had actual knowledge of the patent, it determined reasonably and in good faith that it did not infringe and that therefore there was not a high probability of infringement. Can I ask you if we still have time, can I ask you to discuss the hash issue? Absolutely, Your Honor. So we're moving now to the two-sixth remaining lingering question here. It seems to me that if I accept your argument at full strength then you're arguing something that doesn't seem correct to me. I mean, you're not, Apple cannot induce its own infringement. Correct? Correct. So if this is an inducement, then there's other actors involved. Yes. And isn't the evidence of the activity or the relationship between Apple and those other actors, isn't that an issue in induced infringement? In many cases it is, Your Honor, including... Now explain again why it's not in this case. Okay, because the accused feature here, Apple location services, the alleged act of infringement is that Apple's location services practices the asserted claim of the 092 patent by using a plurality of location-finding devices. That is the same theory asserted as the basis for direct infringement and indirect infringement. The only question is which entity, Apple developer or customer, is operating the feature so as to practice the claim. Okay? If that feature, location services, does not practice the asserted claims, then none of those three entities is liable for infringement. That was the underlying dispute, again, on the merits of the dispute. In many other cases, Judge Rainer, you're absolutely right, where the actual act of infringement is allegedly being undertaken by a third party at its premises or something, that creates different factual questions and different legal questions. That's just not the case here. There's a footnote, actually, in the summer judgment opinion where the court on the other three patents dismisses the indirect infringement claims after dismissing the direct infringement claims on the same theory because these were essentially derivative claims rather than separate claims, if I could explain it that way. On the hash, Judge Bryson, it is a little more complicated than spelling words, Judge Moore. It's a complicated mathematical algorithm designed  and, in fact, specifically so that the input and the output are different. It transmogrifies the information into something new, the hash output, that cannot be... Did you make that word up? That's a real word. Really? Yes. It's a real... It's information that cannot be reverse-engineered, and their expert agrees with this and they agree with this, and that is the whole point of a hash, and Dr. Rosavi testified to that, cited sources to that, in his expert report, which we've cited. We've struggled with analogies in this case, and you've heard about coal trucks and other things. Here, I will offer you wine and vinegar, Your Honors. Wine goes into vinegar, but you can't go the other way. And they're not the same thing. If you try to cook with vinegar, you're going to come up with something different than cooking with wine. And the importance for this case is that the ruling by Judge Chabria, that the user information, and I'll put that term in quotes, has to be the same, is not challenged. The only question is whether the user-inputted password and the hash output from the algorithm are the same, and we submit that, to the extent that it's a factual question, that has been resolved on this record by their own expert's admission that you can't go backwards. If you don't buy that argument, there is a second reason, because the claim itself requires that the information in the provisioning request has to be input by the user. The specification says it has to be input by the user. The claim says it has to be received by the device. That's page A217, column 9, line 25. The hash output is neither input by the user, nor received by the device. It is generated on the Apple server side after the information goes up. So it doesn't meet the limitation of the claims. Would you say it's an abstract result? It's not abstract, Your Honor, because it is predictable. The hash outcome is predictable from the algorithm, it's just not reversible. In fact, what makes a hash algorithm special, they're actually very hard to develop, depending on the number of bits involved, is that you can develop many algorithms. Add one to every digit is an algorithm, but most of them are reversible. Hash algorithms, what's unique about them is they are not reversible. And the outcome of, and the reason they're done that way is so that anybody who gets the hashed output can't get the user password and steal their identity and go do other things. So to suggest that it's the same information, the whole point is that it's changing the information so that, for security reasons, so that you can't get the password. So we submit on the 260, it's clear from the record and the expert testimony of Unwired Planet's own expert, Dr. Jones, that the hashed output is not the same user information as required by the claim. I just wonder about the significance of the non- reversibility to the question of whether it's the same information. In other words, I have the, let's say my password is password. Well, you know, if it's translated into Russian, that's certainly reversible, but it's, you wouldn't say it's not the same information, would you? No, Your Honor, and I think this is one of the distinctions between a translation, you could translate it into a different language or into binary digits or something, and what I've called a transmogrification or a transformation. But it's still the same information, even though it's my password in an unrecognizable to most of the people on the Earth form. After the hash, Your Honor, I would submit it's not your password. So the Russian version of my password is not the user information? I think a translated one presents a much closer question, but I don't think this is a translation. I think that's the reversibility issue. That's what I'm trying to get at. Why is it that the reversibility issue really matters? It seems to me if your argument is that the minute you change the password from something other than P-A-S-S- W-O-R-D, if you make it P-A-S-S- W-O-R-D all lowercase as opposed to all uppercase, it's not the same user information. I understand your argument. It may not be persuasive, but I understand the argument. But I'm having a hard time figuring out why it is that when we do translate, whether it is by a simple algorithm or by the most common algorithm that there is out there using pseudorandom numbers and everything else, which will be nobody, except maybe the FBI, can break. Why that is any different from the Russian version of my word password? Your Honor, let me answer it in two ways if I may. First, the hash, and Dr. Asabi testified to this, is applied to the information precisely in order to change it to different information. That is the reason it is done, is to create a new set of information that hackers cannot use. But that's true of the encrypted version that can be broken. I don't know if that's true or not. There's no evidence on that. Certain encryptions, as you pointed out, add one to each digit. That can be broken. Yes, but where the line is between the same information or not, the point of the hash and a hash being uniquely suited to this, the hash, by the way, is the non-reversibility, that it is changing the information permanently, irreversibly, irretrievably, as we've learned. You can't get back from there. And what Dr. Asabi testified, that's why the hash is applied, to change the information. Dr. Jones doesn't disagree with that. He just calls it a mathematical function, but he agrees on the non-reversibility. What Josh Chabria said is that means that it doesn't meet the same user information. One thing I want to ask you, you're received by argument. How does that argument play out with Judge Bryson's password translated into Russian? If the computer translated it into Russian, and then that's what the Russian translation is what's received by the IOS device, are you saying that's not the user information, or it is? We would need more facts in our hypothetical, Judge. User inputted a word in English, the computer translated that word into Russian and sent it to the IOS device. Isn't that word in Russian, which is received by the IOS device, the user information? It's actually user input to the IOS device. No, that's in the spec. That's not in the claims. Received by the device is user input. If the information received has already been translated, is that your question? Yes. I'm just trying to figure out where the translation takes place. If the information received by the device is identical to what is then provided in the provisioning request, then it would meet that limitation. The user typed in a word in English. What is received by the device is that word in Russian. Is that receiving the correct information? I can't answer the question because I believe the only disclosure is user input directly to the device, and I don't know enough about how the device itself could make that translation or whether that would have to go to an outside server or not. I don't know is the answer. Do you have anything further? Not on 260 unless the court would like to hear anything on 831. Not at this point. Why don't we move on? Thank you for your argument, Mr. Perry. Mr. Campbell, you have three minutes of rebuttal time. We're going to try to bring this to a close at some point. I understand. In fact, I'll try to be very brief. I'll make three points. One is counsel suggested what their experts said about the hash and that it's different information. The record, A10251. What Mr. Rosavi says is the hash does not contain the text of the password. The text. I think that's a very different nobody disputes that the character string is different. The question is is it the same information and it is. Second, there was also a question as to whether there was evidence in the record about the silent pauses for the voice channel. That is in the record at Dr. Jones' expert opinion at A6147. Finally, I would just make the point that there was a number of times it was referenced that if we don't put these requirements on voice channel, we've got some sort of 112 problem. I don't think that's true. But as this court stated in the PP Industries case, section 112 does not mean that a court may give a claim whatever additional precision or specificity is necessary to facilitate a comparison between the claim and the accused product. And that's exactly what the district court did here. The district court believed that it needed to be there needed to be more specificity to a voice channel. It adopted these three requirements so that it could then compare that definition of voice channel to the accused product. And that's improper. Finally, I'll say if those three requirements are what is required of a voice channel, that excludes a number of if you understand voice channel in that way. It simply is not the case that that's how voice channel is limited. For the reasons we've discussed today and presented in the briefing, this court should, one, reverse the district court's summary judgment ruling because the district court improperly resolved questions of fact, and two, remain with the proper claim constructions for voice input in the division. Okay, thank you Mr. Campbell. I thank both counsel for their argument. The case is taken under submission. All rise. ... ... ... ... ...